UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**AMERICAN PIE, INC.,**
    Debtor

Chapter 7
Case No. 04-13874-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, CHAPTER 7 TRUSTEE,**
    Plaintiff

v.

Adv. P. No. 06-1247

**PETER POULOS, LUCY POULOS, CHRISTINA LAMBRENOS, and CONSTANTINE LAMBRENOS,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

    The matter before the Court is the Motion for Summary Judgment filed by the the Plaintiff, the Chapter 7 Trustee of the Estate of American Pie, Inc. (the "Debtor"), pursuant to which he seeks an order disallowing secured proofs of claim filed by the Defendants, Peter Poulos and Constantine Lambrenos (the "Defendants"), as well as an order

1

dismissing the Counterclaim filed by the Defendants. The Defendants oppose the Motion.[1]
The Court heard the matter on November 8, 2006 and directed the parties to file supplemental briefs.

The issue presented is whether, following the expiration of the limitation period set forth in 11 U.S.C. § 546(a), the Trustee may successfully assert his rights as a hypothetical lien creditor under 11 U.S.C. § 544(a), defensively, in response to the Defendants' Counterclaim pursuant to which they seek a declaratory judgment that Peter Poulos and Constantine Lambrenos hold claims secured by property of the estate.

## II. FACTS

The following facts are not in dispute. On May 7, 2004, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Peter Poulos, as Treasurer of the Debtor corporation, signed the petition, and Constantine Lambrenos, as Clerk, executed the Certificate of Vote authorizing the filing of the petition. In its Schedules, the Debtor listed a single asset - - an "[e]scrow held by attorneys Katsenes and Welinsky" [sic] in the sum of $14,500.[2] It did not list any creditors holding secured claims on Schedule D, although it listed a priority claim held by the Commonwealth of Massachusetts in the sum of

---

[1] All four defendants oppose the Trustee's Motion for Summary Judgment. Only Peter Poulos and Constantine Lambrenos, however, filed claims and are listed on Schedule F-Creditors Holding Unsecured Nonpriority Claims.

[2] The Court is empowered to take judicial notice of its own records. See Xytest Corp. v. Mitchell (In re Mitchell), 255 B.R. 97, 104 (Bankr. D. Mass. 2000)(citing In re Nail), 195 B.R. 922, 924 n. 3(Bankr. N.D. Ala. 1996); In re Bestway Products, Inc., 151 B.R. 530, 540 (Bankr. E.D. Cal. 1993), aff'd, 165 B.R. 339 (B.A.P. 9th Cir. 1994)).

$4,297.47 for corporate income taxes and $429,190.60 in unsecured debt. Specifically, on Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed Constantine Lambrenos and Peter Poulos, each with a claim in the sum of $80,000; and Jade Eng with a claim in the approximate amount of $260,000. On Schedule F, the Debtor listed Jade Eng's address in care of "C. Fred Welensky, Esq. [sic]"

Peter Poulos and Christina Lambrenos were shareholders of the Debtor corporation, which was organized in 1990 and operated a restaurant business in Marshfield, Massachusetts. Peter Poulos, Christina Lambrenos, and her husband, Constantine Lambrenos, were officers and directors of the Debtor corporation. Lucy Poulos, the remaining Defendant, is married to Peter Poulos.

In May of 1997, the Massachusetts Commission against Discrimination held a hearing on a sexual harassment claim made by Jade Eng ("Eng"). In March of 1998, it rendered a decision in her favor. After unsuccessful appeals by the Debtor to the Superior Court and the Massachusetts Appeals Court, Eng, in July of 2003, obtained an execution in the amount of $259,436.07. The Debtor's bankruptcy petition was filed less than one year later.

On June 14, 2004 and June 18, 2004, Peter Poulos and Constantine Lambrenos, respectively, filed nearly identical proofs of claim. Each set forth a total claim in the sum of $80,000 secured by collateral worth $14,000. Peter Poulos and Constantine Lambrenos attached copies of UCC-1 financing statements to their proofs of claim filed with the Marshfield Town Clerk in June of 1997.

The Trustee filed an Affidavit in conjunction with his Motion for Summary Judgment in which he represented that he had reviewed UCC filings available on line from the office of the Massachusetts Secretary of State. He stated that with respect to the secured claims filed by Peter Poulos and Constantine Lambrenos "[n]o continuation statement or other UCC filing appears after June 5, 1997 and, based on that, I conclude that none were ever filed." Neither Peter Poulos nor Constantine Poulos contested the Trustee's representation that continuation statements had not been filed.

On May 4, 2006, within two years of the commencement of the Debtor's bankruptcy case, the Trustee filed the above-captioned Complaint. In his Complaint, the Trustee alleged that the Debtor was insolvent from at least 1998 until the petition date; that there were no disinterested directors of the Debtor corporation; and that, on May 29, 1997, approximately three weeks after the hearing held by the Massachusetts Commission against Discrimination on Eng's sexual harassment claim, the Debtor executed two promissory notes. One note was in the sum of $110,983.26 and was for funds allegedly provided by Christina and Constantine Lambrenos between April 1, 1990 and March 31, 1996; the other note was in the sum of $114,749.74 and was for funds allegedly provided by Peter and Lucy Poulos during the same period. According to the Trustee, at various times prior to the petition date, the Debtor's officers, Peter Poulos, Christina Lambrenos, and Constantine Lambrenos, caused the Debtor "to pay for certain personal expenses and

to make other expenditures which had no legitimate corporate purpose or benefit."[3] In addition to itemizing various allegedly improper payments, the Trustee also asserted that the officers of the Debtor corporation operated the business in such a way as to make it difficult for the Trustee or creditors to determine its financial condition. In particular, the Trustee averred that the Debtor did not maintain adequate accounting records and that neither Peter Poulos nor Christina Lambrenos reported wage income or profits from the Debtor for the period between 1996 and 2003, even though they claimed to work 25-30 hours per week.

Based upon these allegations, the Trustee formulated four counts: Count I-Fraudulent Transfers; Count II-Breach of Fiduciary Duty; Count III-Disregard of Corporate Entities/Pierce Corporate Veil; and Count IV-Equitable Subordination. The Trustee sued Lucy Poulos under Count I only, and he brought Count IV against Peter Poulos and Constantine Lambrenos only. Pursuant to Count IV, the Trustee sought to recharacterize the purported payments made by the Defendants to the Debtor corporation as capital contributions, not loans, and to equitably subordinate the claims of the Defendants to the claims of the Debtor's other creditors pursuant to 11 U.S.C. § 510(c). Although he alleged

---

[3] The Trustee listed expenses for automobile leases in excess of $42,000 and expenses for gasoline in excess of $15,000 for vehicles used by the Defendants and members of their families for the period between 1998 and 2002; insurance costs for the vehicles in excess of $9,000 incurred between 2002 and 2002; other automobile related expenses in excess of $5,000 incurred between 1998 and 2001; payments of $1,000 per month to Peter Poulos incurred from August 15, 2000 to June 18, 2002 totaling $35,000; similar payments to Christina Lambrenos incurred between July 25, 2000 and June 18, 2002, totaling $36,000; and various credit card charges.

5

that continuation statements had not been filed by the Defendants, the Trustee did not challenge the perfection of the Defendants' security interests under 11 U.S.C. § 544(a) in his Complaint.

The Defendants responded to the Trustee's Complaint, and Peter Poulos and Constantine Lambrenos asserted in a Counterclaim that they hold perfected security interests in the proceeds of the sale of the Debtor's assets. In an Affidavit, Peter Poulos represented that "[t]he assets were sold September of 2002 [sic] in an attempt to resolve outstanding claims by Jade Eng."

### III. POSITIONS OF THE PARTIES

A. The Trustee

Citing Mass. Gen. Laws ch. 106, § 9-515, the Trustee argues that because no continuation statements were ever filed by the Defendants, the security interests of Peter Poulos and Constantine Lambrenos ceased to be effective on June 5, 2004, five years after the original filings and almost two years before the petition date. Recognizing that the Defendants' Counterclaim contains an assertion that the Trustee failed to timely object to the perfection of the secured claims, the Trustee maintains that Count IV, containing his request to equitably subordinate the Defendants' claims is not subject to the limitation period set forth in 11 U.S.C. § 546.

The Trustee, citing Federal Rules of Bankruptcy Procedure 3007, 7001(9) and 9014, also argues that the Court should consider the secured status of the Defendants' claims in this adversary proceeding. Relying upon Xytest Corp. v. Mitchell (In re Mitchell), 255 B.R.

97, 108 (Bankr. D. Mass. 2000), he maintains that the Defendants should be judicially estopped from asserting secured claims because the Debtor did not list the claims as such on Schedule D.

In his Supplemental Memorandum, the Trustee states that he is not seeking to challenge the perfection of the secured claims filed by Peter Poulos and Constantine Lambrenos under 11 U.S.C. § 544(a), and he is not seeking to avoid the transfer of the security interests under 11 U.S.C. § 548 through his Complaint. Citing, *inter alia*, United States Lines, Inc. v. United States (In re McLean Indus., Inc.), 196 B.R. 670 (S.D. N.Y. 1996), he states, however, that he may defensively assert the lack of perfection in objecting to a claim against the estate because "[t]he limitations period set forth in § 546 is inapplicable to claims objections." In other words, he maintains that he can raise his status as a hypothetical lien creditor as a defense to the Defendants' Counterclaim.

B. The Defendants

In their objection to the Trustee's summary judgment motion, the Defendants state that "American Pie maintained continued and sufficient possession over all items described as securing the notes until September 2006 [sic], when American Pies's furniture was auctioned to pay the debt due creditor Jade Eng." Citing U.C.C. § 9-313(c), they add that the sale did not effectively terminate the Debtor's dominion over the chattel as it held the traceable and identifiable proceeds on behalf of the corporation. Having concluded that the Debtor, through its agent, had possession of the proceeds, the Defendants, then state that they, "at all times, have maintained possession and dominion over the collateral."

7

They add: "[t]o the extent that the Defendant-Counterclaimants lost actual physical possession of all the collateral in question, the proceeds of the liquidated collateral were, at all times, held in escrow for the benefit of the Defendants by their counsel as well as the counsel for the Plaintiff." They conclude that they "were not required to file for an extension of financing under U.C.C. § 9-515." In support of this contention, the Defendants submitted the Affidavit of Peter Polous who represented that the proceeds of the September 2002 sale of the Debtor's assets were in the constructive possession of the Defendants' counsel.

In their Supplemental Memorandum, the Defendants frame the issue now before the Court as whether the Trustee may defensively use his strong-arm power to avoid the unperfected security interest of Peter Poulos and Constantine Lambrenos, despite the expiration of the deadline imposed by 11 U.S.C. § 546(a). Recognizing <u>Matter of Mid Atlantic Fund, Inc.</u>, 60 B.R. 604 (Bankr. S.D. N. Y. 1986), as the "'touchstone' case for the legal theory of permitting the Trustee's use of avoidance powers 'defensively' under 11 U.S.C. § 502(d) notwithstanding the limitations contained in 11 U.S.C. § 546(a)," the Defendants urge the Court to reject that case in favor of the approach taken in another case, <u>In re Marketing Assocs. of Amer., Inc.</u>, 122 B.R. 367 (Bankr. E.D. Mo. 1991).

## IV. DISCUSSION

### A. Summary Judgment Standard

The standard for allowance of summary judgment is well known and needs little explanation. This Court may enter summary judgment "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056(c). In considering a motion for summary judgment, this Court must draw all reasonable inferences from the facts in the manner most favorable to the nonmovant. *See* Beatrice v. Braunstein (In re Beatrice), 296 B.R. 576, 579 (B.A.P. 1st Cir. 2003)(citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994), and Piccicuto v. Dwyer, 39 F.3d 37, 40 (1st Cir. 1994)).

B. Analysis

The material facts necessary to determine the Defendants' Counterclaim are not in dispute. The financing statements filed by the Defendants expired in June of 2002. The Debtor's assets were sold in September of 2002 at a time when the Defendants' security interests were unperfected because of the failure of the Defendants to file continuation statements. The Defendants maintain that they held possession of the collateral through an agent thereby relieving them of the need to file continuation statements. The Defendants failed to support this assertion with competent evidence in response to the Trustee's Motion for Summary Judgment.

With respect to the primary issue in this case, whether the Trustee can assert rights of a hypothetical lien creditor defensively, the parties cite several sections of the Bankruptcy Code, namely, §§ 544 and 502(d), in addition to § 546. Section 544(a) grants the trustee, as of the commencement of the case, and without regard to any knowledge he or

any creditor may have, the rights and powers of a creditor that extends credit to the debtor at the time of the commencement of the case and obtains a judicial lien. It also grants to the trustee the power to avoid any transfer of property of the debtor or any obligation incurred by the debtor that would be voidable by a hypothetical lien creditor.

Section 544 is subject to the limitation period set forth in 11 U.S.C. § 546(a) when it is invoked by a trustee in a complaint. On the contrary, § 502(d) is not subject to a limitation period. It provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522 (f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). The parties cite cases in which courts analyze the defensive use of the trustee's avoidance powers with reference to § 502(d) after the expiration of the limitation period set forth in § 546(a). *Compare* In the Matter of Mid Atlantic Fund, Inc., 60 B.R. 604 (Bankr. S.D. N.Y. 1986)(where trustee made a prima facie showing that assignment of a mortgage was a preferential transfer, trustee could assert preference and priority under 11 U.S.C.§ 544(a)(2) as a defense to the assertion of a secured claim based upon § 502(d), notwithstanding the expiration of the statute of limitations set forth in § 546) *with* In re Marketing Assocs. of Amer., Inc., 122 B.R. 367 (Bankr. E.D. Mo. 1991)(contra). The court in In re McLean Indus., Inc. observed that the majority of courts has permitted the defensive use of § 502(d), 196 B.R. at 676 (citing In re KF Dairies, Inc., 143 B.R. 734, 736

10

(B.A.P. 9th Cir. 1992); In re Stoecker, 143 B.R. 118, 131 (Bankr. N.D. Ill.), *aff'd*, 143 B.R. 879 (N.D. Ill. 1992); In re Chase & Sanborn Corp., 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991); In re Minichello, 120 B.R. 17, 19 (Bankr. M.D. Pa. 1990)). *See also* In re America West Airlines, Inc., 217 F.3d 1161 (9th Cir. 2000); In re Cushman Bakery, 526 F.2d 23 (1st Cir. 1975), *cert. denied*, 425 U.S. 937 (1976). In Cushman Bakery, the United States Court of Appeals for the First Circuit, interpreting § 57g of the former Bankruptcy Act, emphasized that the goal of equality of distribution was disturbed by an illicit preference. It, therefore, permitted the trustee to assert receipt of a preference defensively after the expiration the limitation period.

In In re Asia Global Crossing, Ltd., 344 B.R. 247 (Bankr. S.D. N.Y. 2006), the court examined a trustee's objection to a proof of claim based upon the debtor's prepetition guarantee of a related corporation's performance under a contract to provide telecommunications capacity as a constructively fraudulent obligation. In Asia Global, the trustee recognized that his affirmative avoidance action was time-barred under § 546(a), and conceded that § 502(d) was inapplicable. Nevertheless, he asserted that he could still defeat the claim because it was based upon an otherwise avoidable fraudulent obligation. Id. at 250. The claimant responded to the trustee's argument by noting that because of a prior release, no unsecured creditors existed on the petition date as required by 11 U.S.C. § 544(b). Id.

The bankruptcy court in Asia Global rejected the trustee's position. In so doing, it observed that § 502(d) is an exception to the general rule that the trustee, as the statutory

11

successor to the debtor, may assert the personal defenses that belonged to the debtor under non-bankruptcy law. Id. at 251. The court explained that § 502(d) grants the trustee additional defenses that the debtor could not have asserted under non-bankruptcy law. The court in Asia Global determined that "the words of § 502(d) limited its application to avoidable transfers." Id. at 251-52. In ruling against the trustee, the court distinguished In re Loewen Group Int'l, Inc., 292 B.R. 522 (Bankr. D. Del. 2003), in which the court permitted the trustee to use his strong arm powers under § 544(a)(3) to cut off the claim that property was held for the benefit of an affiliated debtors and third parties in a resulting trust, even though § 502(d) was inapplicable.

The court in Loewen Group, determined that the trustee could use § 544(a)(3) defensively even though the statute of limitations had expired under § 546, rejecting the argument that § 544 could not be used defensively because a proof of claim had not been filed against the estate. The court concluded that the action before it was essentially an attempt to recover on a claim.

The court in Asia Global explained:

> Loewen's explicit approach supplies the clearest rationale for the results in these cases. Any time a third party seeks to recover property of the estate, whether through a proof of claim, a turnover proceeding or the assertion of a superior interest in estate property, the third party is asserting a "claim" within the meaning of § 502(a). In those instances, the trustee can assert the estate's rights under § 502(d). This construction is consistent with the overarching principle of equality of distribution, and the specific purpose of § 502(d).

344 B.R. at 255. The court added that "the cases involving the trustee's reliance on his

12

strong arm powers under § 544(a) can be explained without regard to § 502(d)." Noting that § 544, in addition to avoidance powers, provides the trustee with a status which he retains throughout the case, the court stated that the trustee's use of § 544(a)(3) to defend against turnover claims, or proceedings to quiet title in property of the estate, essentially involve the assertion of a non-bankruptcy common law defense. Id. at 256.

In view of the case law discussed above, the issue in this case can be restated as whether the rationale used with respect to § 544(a)(3) applies to permit the defensive use of the trustee's status under § 544(a)(1) in objecting to a claim against the estate. This Court rules that it does.

Because the Defendants in their Counterclaim essentially are asserting secured claims against the proceeds from the sale of the Debtor's collateral, the Court finds that they have the ultimate burden of proof. See Fed. R. Bankr. P. 3001. Although their proofs of claim constituted prima facie evidence of the validity and amount of the claim, see Fed.R. Bankr. P. 3001(f), the Trustee's Motion for Summary Judgment has the effect of shifting the burden to the Defendants to establish that their claims, in fact, are secured. In other words, the Trustee, in objecting to the Defendants' assertion of a superior interest in the proceeds of collateral by establishing the absence of continuation statements, and by raising his status as a hypothetical lien creditor under § 544(a), presented sufficient evidence to shift the burden to the Defendants to establish that their security interests remained perfected by possession after the expiration of the initial UCC filings. See In re Fili, 257 B.R. 370, 372 (B.A.P. 1st Cir. 2001)(citing In re Hemingway Transp., Inc., 993 F.2d 915, 925 (1st Cir.

1993)("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*.").

The Defendants rely on the provisions of Mass Gen. Laws ch. 106, § 9-313(c) to support their contention that they had perfected their security interests by possession. Section 9-313 provides in relevant part the following:

> (c) Collateral in possession of person other than debtor. With respect to collateral other than certificated securities and goods covered by a document, a secured party takes possession of collateral in the possession of a person other than the debtor, the secured party, or a lessee of the collateral from the debtor in the ordinary course of the debtor's business, when:
>
> > (1) the person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit; or
> >
> > (2) the person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession of collateral for the secured party's benefit.

Mass. Gen. Laws ch. 106, § 9-313(c). *See also* Id. at § 102(a)(7) and (69). The Defendants failed to submit competent evidence to rebut the Trustee's Affidavit and to support their reliance on Mass. Gen. Laws ch. 106, § 9-313(c). The Debtor's attorney took possession of the proceeds of the collateral after the sale of the Debtor's assets and transferred them to an escrow account, which according to the Defendants "permitted American Pie's counsel to have access and control over the proceeds on behalf of the Debtor." The Defendants also aver that the proceeds were held in escrow "for the benefit of the Defendants by their counsel as well as the counsel for the Plaintiff [sic]." The Court finds that this reference is

to counsel to Jade Eng, not the Trustee in this proceeding, because the sale preceded the filing of the bankruptcy petition. Additionally, as noted above, the Debtor listed the escrow as being held by Katsenes and Welinsky on Schedule B and listed C. Fred Welensky [sic] as counsel to Jade Eng on Schedule F.

In their pleadings filed in opposition to the Motion for Summary Judgment, the Defendants failed to identify their counsel or counsel to the Debtor, although, at the hearing on the Trustee's summary judgment motion, Defendants' counsel identified Attorney Sylvia Katsenes as both counsel to the Debtor and counsel to the Defendants. The Defendants failed produce an affidavit from counsel to the Debtor or their counsel, or any other third party, authenticating a record acknowledging that he or she held possession of collateral for their benefit. *See* Mass. Gen. Laws ch. 106, § 9-313(c). Moreover, they did not submit an acknowledgment in "a record," defined as "information inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form." In re Clayson, 341 B.R. 137, (Bankr. W.D. N.Y. 2006)(quoting 4 James J. White & Robert S. Sommers, Uniform Commercial Code § 31-8, at 154 (5th ed. 2002)). The Defendants also failed to submit a copy of the escrow agreement demonstrating that their counsel had complete and unfettered control over the proceeds in escrow without the need to notify or obtain the consent of Attorney Welensky because, as Peter Poulos stated in his Affidavit, "[t]he assets were sold September of 2002 [sic] in an attempt to resolve outstanding claims by Plaintiff Jade Eng." Accordingly, under these circumstances, the Court finds that the Defendants failed to establish with competent evidence that their

security interests in the proceeds of the collateral were perfected by possession. Indeed, in the absence of an a record in which the person or persons in possession of the proceeds acknowledged holding the proceeds for the Defendants as required by § 9-313(c), the only evidence the Court has, namely the Debtor's Schedules signed under penalty of perjury by Peter Poulos, is that the proceeds were held in a joint escrow between "Katsenes and Welinsky"[sic] and were not subject to any secured claims.

Because the Court finds that the Trustee may assert his status as a hypothetical lien creditor as a defense to the Defendants' Counterclaim, and, as a result of the Defendants' failure to establish either that the security interests were perfected by possession or by the filing of continuation statements, the Trustee's lien under § 544(a) is entitled to priority over the Defendants' unperfected security interests. *See* Mass. Gen. Laws ch. 106, § 9-515(c). *Cf.* In re Hurst, 308 B.R. 298, 301-02 (Bankr. S.D. Oh. 2004).

## IV. CONCLUSION

Upon consideration of the foregoing, the Court grants the Trustee's Motion for Summary Judgment. An appropriate order shall issue.

By the Court,

*[signature]*

Joan N. Feeney

Dated: January 30, 2007                   United States Bankruptcy Judge
cc: Richard N. Gottlieb, Esq., Stephen M. Sheehy, Esq., Donald R. Lassman, Esq.